AO 106 (Rev. 04/10) Application for a Search Warrant          AUTHORIZED AND APPROVED/DATE:  /s/Elizabeth Bagwell 6-13-2024

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of )<br><br>INFORMATION ASSOCIATED WITH )<br>ALEXPHU888@GMAIL.COM THAT IS )<br>STORED AT PREMISES CONTROLLED BY )<br>GOOGLE LLC ) | Case No. M-24- 509 -SM |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the ___Northern___ District of ___California___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"   which is incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 18 U.S.C. § 1956(h) | Conspiracy to launder monetary instruments |

The application is based on these facts:

See attached Affidavit of Special Agent, Sean Lively, DEA, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sean Lively, Special Agent, DEA
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 14, 2024
_____

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma          SUZANNE MITCHELL, U.S. MAGISTRATE JUDGE
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ALEXPHU168@GMAIL.COM, PGT16888@GMAIL.COM, ALEXPHU888@GMAIL.COM, AND NOVAPHUGTR@GMAIL.COM, THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. __M-24-509-SM__ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Sean Lively, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of applications for search warrants for information associated with certain accounts, specifically (1) alexphu168@gmail.com (**SUBJECT ACCOUNT 1**); (2) pgt16888@gmail.com (**SUBJECT ACCOUNT 2**); (3) alexphu888@gmail.com (**SUBJECT ACCOUNT 3**), and (4) novaphugtr@gmail.com (**SUBJECT ACCOUNT 4**) (collectively, the "**SUBJECT ACCOUNTS**"). The information associated with the **SUBJECT ACCOUNTS** are stored at premises controlled by Google LLC ("Google"), a provider of electronic communication services, headquartered at

1

1600 Amphitheatre Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in **Attachment A.** This affidavit is made in support of an application for search warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in **Section I** of **Attachment B.** Upon receipt of the information described in **Section I** of **Attachment B,** government-authorized persons will review that information to locate the items described in **Section II** of **Attachment B.**

2.    I am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure. I am currently assigned to the High Intensity Drug Trafficking Area (HIDTA) Enforcement Group in Oklahoma City of the DEA and have been so since February 3, 2020. Prior to my assignment with HIDTA, I attended the Basic Agent Academy Class in Quantico, Virginia. In addition, I have attended schools or trainings dedicated to drug investigations. Since becoming a Special Agent, I have been involved in a wide variety of investigative matters, including numerous investigations targeting large criminal enterprises, most of which involved the unlawful distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846. I have participated in many aspects of criminal investigations, including surveillance,

applying for and executing search warrants, criminal and administrative arrests, and interviewing and debriefing defendants, informants, and other witnesses. I have also worked with other local and federal law enforcement officers regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. Through my training and experience, I have become familiar with some of the methods by which illegal drugs are imported, distributed, and sold, as well as the means used by drug dealers to disguise the source and nature of their profits. I have also received formal training in money laundering, and how criminal networks can layer assets purchased through illegal proceeds.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, reports provided to me by other law enforcement officers, and statements made by witnesses and other concerned parties. Since this affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrants, I have not included each and every fact known to me concerning this investigation.

4.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 846 (drug conspiracy) and 18 U.S.C. § 1956(h) (money laundering conspiracy) have been committed by Chong Phu, a/k/a Alex Phu (**PHU**), Chanh Phu, a/k/a

3

Shawn Phu (**CHANH**), and Nova Wenida Phu (**NOVA**). There is also probable cause to search the information described in **Attachment A** for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in **Attachment B**.

## JURISDICTION

5.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND TO THE INVESTIGATION

6.    On April 2, 2024, the Grand Jury sitting in the Western District of Oklahoma returned an indictment charging **CHONG IU PHU (PHU)** and **CHANH IU PHU (CHANH)** with, among other things, a drug conspiracy involving 1,000 or more kilograms of marijuana and 1,000 or more marijuana plants, in violation of 21 U.S.C. § 846. The indictment alleges that **PHU**, a real estate broker, and Matthew Alan Stacy, an attorney, worked together to help marijuana traffickers, who did not qualify to own and operate marijuana farms under Oklahoma's medical marijuana program, evade licensing requirements to obtain the necessary state-issued licenses. The indictment

4

also alleges that **PHU** and his brother **CHANH**, in concert with others employed at **PHU's** realty firm Gold Tree Realty, served as a one-stop-shop for marijuana traffickers from other states seeking to set up marijuana grows. The indictment alleges that many of these marijuana grows operated on the black market and that **PHU** and **CHANH** aided and abetted marijuana traffickers in a variety of ways under the guise of professional services. These services included brokering land sales for out-of-state residents seeking to purchase land to serve as marijuana grows, renting land to black-market marijuana traffickers, and providing services to ensure that their clients' marijuana grows were maintained—services that included hiring armed security guards for the grows, as well as contractors to do electrical, HVAC, or construction work, particularly in the event that the owners of the grow did not speak English.

7.      Although **PHU** was arrested on April 10, 2024, cooperator statements from CS1 indicate that **PHU** is still tasking CS1 to make cash deposits consisting of rent payments from marijuana distributors.[1]  Further, CS1 stated that during the several years he/she has worked for **PHU**, **PHU**

---

[1]      CS1 is cooperating in exchange for consideration on possible future criminal charges. Much of the information provided by CS1 thus far has been corroborated through other investigative means, and I am unaware of any instance where CS1 has provided false information.

has directed him/her to pick up cash from marijuana growers on multiple occasions, sometimes to pay electric bills on the growers' behalf. Investigators met with CS1 in June of 2024, at which time CS1 indicated he/she was still working for **PHU** and had recently received cash from **PHU** to make additional bank deposits.

8. As part of the investigation prior to the indictment, law enforcement obtained search warrants authorized by Judge Suzanne Mitchell for several Google accounts used by **PHU**, specifically alexphu168@gmail.com, alexphu888@gmail.com, pgt16888@gmail.com, and one belonging to his wife Wenida Nova Phu (**NOVA**), novaphugtr@gmail.com. In response, Google provided records up through early November 2023. As discussed below, those records provided evidence of a drug conspiracy and money laundering. Law enforcement is now seeking records for the **SUBJECT ACCOUNTS** that were created from November 1, 2023, through the present day. As addressed herein, there is probable cause to believe that the **SUBJECT ACCOUNTS** will contain additional evidence of **PHU's** crimes, given that the conspiracy remains ongoing and such evidence was found in the previous returns produced by Google in response to the search warrants.

## PROBABLE CAUSE PERTAINING TO THE SUBJECT ACCOUNTS

9.    As detailed above, and further discussed below, I believe there is probable cause to believe that **PHU** and/or his co-conspirators have used several email accounts, including the **SUBJECT ACCOUNTS**, in furtherance of drug and money laundering conspiracies.  A review of the returns from the previous warrants for **SUBJECT ACCOUNT 1, SUBJECT ACCOUNT 2, and SUBJECT ACCOUNT 3** confirmed that **PHU** does control those accounts and uses them to facilitate the conspiracy. Additionally, the returns from the previous warrant for **SUBJECT ACCOUNT 4** confirmed that **NOVA** controls the account and uses it to facilitate the conspiracy.

**alexphu168@gmail.com (SUBJECT ACCOUNT 1)**

10.    The returns for **SUBJECT ACCOUNT 1** revealed that **PHU** maintains detailed spreadsheets documenting payments related to his rental properties, including those he rents to black-market marijuana grows. **SUBJECT ACCOUNT 1** contained an email dated November 4, 2023, that included an electric bill in the name of Hon NG for approximately $5,000 among multiple separate meters located at 4000 SW 149th St., Oklahoma City, Oklahoma.  OBN records confirm that this location is the address of Clinton Green LLC, a known marijuana grow.  Hon NG is the listed contact

7

on Clinton Green's OMMA application. Although **PHU** is not the listed owner for this grow, **SUBJECT ACCOUNT 1** received the utility bills, leading me to believe that **PHU** exercises some control over the grow's operations. My training, experience, and knowledge of the investigation, including the previous search warrant returns for **SUBJECT ACCOUNT 1**, lead me to believe that **PHU** is exercising control at numerous marijuana grows and that **SUBJECT ACCOUNT 1** contains evidence of such crimes.

**PGT16888@gmail.com (SUBJECT ACCOUNT 2)**

11.    A review of the previous search warrant returns for **SUBJECT ACCOUNT 2** and **SUBJECT ACCOUNT 3** show that they are often both cc'd on the same emails. For example, OMMA sent an email to **SUBJECT ACCOUNT 2** and **SUBJECT ACCOUNT 3** on October 26, 2023, stating that OMMA had confirmed the surrender of marijuana licenses for Excellence Success LLC and White Tea LLC. **SUBJECT ACCOUNT 2** would also forward OBN and OMMA documents to **SUBJECT ACCOUNT 4**. Additionally, **SUBJECT ACCOUNT 2** had documents related to the ownership structure at the garden supply store located at 4700 SW 25th St., Oklahoma City, Oklahoma, saved to the account. According to a Confidential Source (CS2), this garden supply store, which has operated under a variety of names, including Citadel, Green Leaf, and Sweet Harvest, exclusively serves

8

the marijuana industry in Oklahoma, both as an operational supply store, and as a money laundering vehicle. Grows can use the store as an unofficial bank, to avoid the traditional financial system and conceal the proceeds derived from their black-market grows.[2] CS2's information was consistent with what law enforcement found when they executed a search warrant at the garden supply store on January 10, 2024, namely records that showed the garden supply store was accepting large cash deposits from its client marijuana traffickers, money which was then applied to the client's account with the store or maintained for later withdrawal by the client. Additionally, CS1 reported to investigators that they recalled at least one occasion where **PHU** had ordered them to pick up a brown bag full of cash from the same garden supply store and return it to **PHU**. In short, **SUBJECT ACCOUNT 2** contained emails that further confirmed **PHU's** control at the garden supply store, a money laundering vehicle for black-market marijuana traffickers.

_____

[2]    CS2 is cooperating in exchange for consideration on possible future criminal charges for his/her connection to the garden supply store's money-laundering scheme. Much of the information provided by CS2 thus far has been corroborated through other investigative means, and I am unaware of any instance where CS2 has provided false information.

**alexphu888@gmail.com (SUBJECT ACCOUNT 3)**

12. As mentioned above, **SUBJECT ACCOUNT 3** and **SUBJECT ACCOUNT 2** are often cc'd on the same emails. For example, OMMA sent an email on October 11, 2023, to **SUBJECT ACCOUNT 3** and **SUBJECT ACCOUNT 2** regarding the expiration of the business license for Five Star Liberty LLC, a marijuana grow located in Elgin, Oklahoma. This, of course, is relevant to the allegation that **PHU** helped maintain black-market marijuana grows because a Confidential Source (CS3) has stated that **PHU**, without the CS3's permission, used his/her name as the owner on Five Star Liberty LLC's paperwork with OMMA.[3] Investigators also located an additional email from OMMA sent to both **SUBJECT ACCOUNT 2** and **SUBJECT ACCOUNT 3** on September 22, 2023, indicating that a new application for a license had successfully been submitted. As **SUBJECT ACCOUNT 2** and **SUBJECT ACCOUNT 3** were the only recipients of the email, it appears that **PHU** submitted these marijuana license applications. **SUBJECT ACCOUNT 3** also received emails related to the purchase, sale, and property taxes of

---

[3] CS3 is cooperating in exchange for consideration on current state charges and possible future criminal charges. Much of the information provided by CS3 thus far has been corroborated through other investigative means, and I am unaware of any instance where CS3 has provided false information.

10

properties relevant to the conspiracy. For example, within the returns for **SUBJECT ACCOUNT 3**, there was an email dated September 21, 2023, from a Senior Vice President of Quail Creek Bank regarding **PHU's** past-due property taxes on a number of properties, including 1261 E 33rd St., Edmond (the location of **PHUs** former marijuana-related-business consulting firm, Golden Fortune Consulting), 14008 Lago Strada, Oklahoma City (the rented residence of Le Qian Zhang, a black-market marijuana grow operator), and 1817 Edgewood Dr, Edmond (the residence of **PHU's** full-time electrician he employed to work on marijuana grows). In short, the ongoing investigation and the returns from the last search warrants served on these Google accounts leads me to believe that **SUBJECT ACCOUNT 3** will contain evidence of **PHU's** crimes through the present day.

**novaphugtr@gmail.com (SUBJECT ACCOUNT 4)**

13. An email from **SUBJECT ACCOUNT 4** to goldenfortune.heidi@gmail.com contains a spreadsheet with the names and contact information for over 80 grows, many of which the investigation has revealed are fraudulently created, operating on the black-market, or (most often) both. Additionally, there are multiple emails between **SUBJECT ACCOUNT 4** and **SUBJECT ACCOUNT 1** containing documents related to the ownership structure and the lease for the garden supply store located at

11

4700 SW 25th St. As explained above, investigators have determined that this store services the marijuana industry in Oklahoma, partly as a money laundering vehicle for various grows.

## BACKGROUND CONCERNING EMAIL

14.    In my training and experience, I have learned that Google (Gmail) provides a variety of on-line services, including electronic mail ("email") access, to the public. Google (Gmail) allows subscribers to obtain email accounts at the domain name Gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google (Gmail) subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

15.    A Google subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data,

pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

16.    In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

17.    In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and

durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

18.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

14

As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the

15

geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

19.    Based on the forgoing, I request that the Court issue the proposed search warrant.

20.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Google.  Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

SEAN LIVELY
Special Agent, DEA

Subscribed and sworn to before me on June 14, 2024 .

SUZANNE MITCHELL
United States Magistrate Judge

17

# **ATTACHMENT A**

## **Property to Be Searched**

This warrant applies to information associated with Alexphu888@gmail.com, that is stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California.

## **ATTACHMENT B**

### **Particular Things to be Seized**

### I.    **Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    The contents of all emails associated with the account from **November 1, 2023, to the present day**, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of

connecting, log files, and means and source of payment (including any credit or bank account number);

  c.  The types of service utilized;

  d.  All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

  e.  All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

  The Provider is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes [[fruits, contraband, evidence, and instrumentalities]] of violations of 21 U.S.C. § 846 (drug conspiracy) and 18 U.S.C. § 1956(h) (money laundering conspiracy), those violations involving Chong Phu, Chanh Phu, and Nova Wenida Phu, and occurring November 1, 2023, and after, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Any and all correspondence discussing: business licenses, marijuana, marijuana licenses/ licensing, the Oklahoma Bureau of Narcotics (OBN), the Oklahoma Medical Marijuana Authority (OMMA), the Oklahoma Secretary of State's Office, land purchases, lease agreements, marijuana cultivation and equipment, utility bills, deed exchanges, banking information to include loan payments and electronic transfers, the exchange of illegal narcotics, the laundering of currency, and/or the transportation/ concealment of narcotics.

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters related to business licenses, marijuana, marijuana licenses/ licensing, the Oklahoma Bureau of Narcotics (OBN), the Oklahoma Medical Marijuana Authority (OMMA), the Oklahoma Secretary of State's Office, land purchases, lease agreements, marijuana cultivation and equipment, utility bills, deed exchanges, banking information to include loan payments and electronic transfers, the exchange of illegal narcotics, the laundering of currency, and/or the transportation/ concealment of narcotics, including records that help reveal their whereabouts.